1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **NORTHERN DISTRICT OF CALIFORNIA**

10                             **SAN FRANCISCO DIVISION**

11

| | |
|---|---|
| ROBERT P. MULLER, an individual, CESAR MIANI, an individual, YOLANDA MIANI, an individual, and on behalf of the general public,<br><br>              Plaintiffs,<br><br>          v.<br><br>AUTO MISSION, LTD., a corporation, dba Hayward Toyota; TOYOTA MOTOR CREDIT CORPORATION, a corporation; and DOES 1 through 20, Inclusive,<br><br>              Defendants. | No. 13-cv-00304-NC<br><br>**ORDER REMANDING CASE TO STATE COURT** |

20

21          The issue before the Court is whether removal to federal court was proper on the

22  basis of federal question jurisdiction where plaintiffs' claims, brought primarily under

23  various California consumer protection statutes, also include alleged violations of the

24  federal Truth In Lending Act ("TILA").  Because defendants have not satisfied their burden

25  of showing that plaintiffs' right to relief "necessarily depends on resolution of a substantial

26  question of federal law," the Court finds that removal was improper, and REMANDS the

27  case to state court.

28  //

# I. PLAINTIFFS' ALLEGATIONS

Plaintiffs initiated this lawsuit against defendants Auto Mission and Toyota Motor Credit Corporation ("TMCC") in the Superior Court of California, San Mateo County on August 31, 2012.  Dkt. No. 1 at 5, 9.  The action arises out of plaintiffs' purchase of a vehicle from Auto Mission and financing for that vehicle from TMCC.  *Id.* at 9.  The contract of sale, a Retail Installment Sale Contract ("RISC"), was allegedly assigned to TMCC.  *Id.* ¶¶ 86-87.  The complaint includes allegations that Auto Mission charged plaintiffs a 6.99% annual percentage rate ("APR") with a $1,000 rebate instead of the 0% APR promised, *id.* ¶¶ 60, 76, 129; sold them aftermarket products they did not ask for, *id.* ¶¶ 79, 130; charged $29 for an optional DMV electronic filing fee without consent, *id.* ¶¶ 80, 102; disclosed the prior credit balance as of five days after the transaction date, *id.* ¶¶ 81-82, 103, 131; excluded $3,000 plaintiffs paid to the dealership as part of the down payment from the "column" portion of item 6 in the RISC, *id.* ¶¶ 84, 104, 132; left blank spaces in the RISC, *id.* ¶¶ 71, 99, 127; failed to disclose the true identity of the buyers on the RISC as Cesar and Yolanda Miani, *id.* ¶ 105; failed to provide the RISC in Spanish, *id.* ¶¶ 106, 150; obtained Muller's execution of the RISC in Muller's home, without providing disclosures, *id.* ¶¶ 107-108; and failed to provide a copy of the RISC at the time of execution, *id.* ¶¶ 110, 126.

Plaintiffs allege that Auto Mission and TMCC violated various consumer protection statutes: the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750 *et seq.*, the Automobile Sales Finance Act ("ASFA"), Civil Code § 2981, *et seq.*, the Contract Language Translation Law, Civil Code § 1632, the Unfair Competition Law, Business & Professions Code § 17200, *et seq.*, the False Advertising Law, Business & Professions Code § 17500, *et seq.*, and, various provisions of the California Vehicle Code.  *See id.* at 10.  Plaintiffs also allege causes of action for declaratory relief and conversion.  *Id.* at 36-38.  Only plaintiffs' CLRA and ASFA claims reference the TILA, codified in federal law at 15 U.S.C. Section 1601, *et seq.*, and Regulation Z, codified at 12 C.F.R. 226.  *See* 12 C.F.R. 226.1(a) ("This regulation, known as Regulation Z, is issued by the Board of

Governors of the Federal Reserve System to implement the federal Truth in Lending Act ...").

The CLRA cause of action is based on a number of different theories which are listed separately as the following thirteen "counts": (1) "Misrepresenting the Terms of the Agreement"; (2) "Requiring BUYERS to Execute a RISC containing Blank Spaces"; (3) "Misrepresenting the Amount of the APR"; (4) "Misrepresenting the Cost of After Market Products"; (5) "Misrepresenting BUYERS' Obligation for Optional DMV Electronic Filing Fee"; (6) "Misrepresenting the Trade-in payoff amount"; (7) "Misrepresenting the Amount Given as a Down Payment"; (8) "Misrepresenting the True Identity of the Buyers"; (9) "Failure to Provide a Spanish Language Copy of the RISC"; (10) "Conducting an Improper Offsite Sale"; (11) "Failure to Provide Offsite Sale Disclosures"; (12) "Failure to Provide Copies of Signed Credit Application"; and (13) "Failure to Provide Copies of Signed Sale Documents Prior to Delivery of VEHICLE." Dkt. No. 1 at 24-27. Two of the counts refer to the TILA. Count 2 alleges that "When SELLER required MULLER to execute a RISC for the purchase of the VEHICLE which contained blank spaces and which failed to provide the disclosures required by [TILA] and by ASFA, SELLER violated Civil Code §1770(a)(5), (9) and (14)." *Id.* ¶ 99. In addition, Count 8 alleges that "When SELLER engaged in a 'straw purchase' by failing to disclose the true identity of the buyer on the RISC as CESAR and/or YOLANDA, despite its knowledge of the true identity of the buyer, SELLER failed to comply with TILA and ASFA. In so doing, SELLER violated Civil Code §1770(a)(5), (9) and (14)." *Id.* ¶ 105.

Like the CLRA cause of action, the ASFA claim is based on multiple theories alleged as ten separate "counts": (1) "Failure to provide disclosures required by Regulation Z"; (2) "Failure to provide disclosures required by Civil Code §2982"; (3) "Failure to provide disclosures required by Civil Code §2982(a)"; (4) "Failure to Provide Copies of Signed Credit Application"; (5) "Requiring BUYERS to Execute a RISC Containing Blank Spaces"; (6) "Failure to Provide Copies of Signed Sale Documents Prior to Delivery of

VEHICLE"; (7) "Untruthful/Inaccurate Disclosure of the Amount of the APR";

(8) "Untruthful/Inaccurate Disclosure of the Cost of After Market Products";

(9) "Untruthful/Inaccurate Disclosure of the Trade-In payoff amount"; and (10)

"Untruthful/Inaccurate Disclosure of the Amount Given as a Down Payment."  Again only

two of the counts refer to the TILA/Regulation Z.  Count 1 alleges that "Civil Code §2982

requires that '(e)very conditional sale contract subject to this chapter shall contain the

disclosures required by Regulation Z, whether or not Regulation Z applies to the

transaction.' [¶]  SELLER failed to truthfully and accurately provide all of the disclosures

required by Regulation Z."  *Id.* at ¶¶ 121-22.  Additionally, Count 7 alleges that "When

SELLER charged a 6.99% APR, SELLER failed to truthfully and accurately disclose the

terms that had been negotiated by the parties, in violation of Regulation Z and Civil Code

§2982."  *Id.* at ¶ 129.

## II. PROCEDURAL BACKGROUND

On January 22, 2013, TMCC removed the action to this Court, and Auto Mission

consented to the removal.  *Id.* at 1-7.  Shortly thereafter, TMCC filed a motion to compel

arbitration, in which Auto Mission joined.  Dkt. Nos. 5, 12.  Although plaintiffs did not

challenge the removal, on April 15, 2013, the Court issued an order *sua sponte* directing

defendants to show cause why the case should not be remanded to state court, and

deferring ruling on the pending motion to compel arbitration until resolution of this

threshold jurisdictional issue.  Dkt. No. 27.

TMCC timely filed a response to the order to show cause, in which Auto Mission

joined.  Dkt. Nos. 28, 29.  In their response, defendants contend that federal question

jurisdiction exists because, if their disclosures comply with Regulation Z, defendants

cannot be found to have violated the CLRA or the ASFA.  Dkt. No. 28 at 3.  Plaintiffs filed

a reply asserting that the case should be remanded to state court because, although

plaintiffs' claims under ASFA and CLRA peripherally allege violations of

TILA/Regulation Z, their claims "do not depend on federal law since defendants could be

found to have violated the CLRA and ASFA on a number of different state law grounds

without the need to construe any federal statute or regulation." Dkt. No. 30 at 2-3.  The

Court agrees that the matter should be remanded.  The parties consented to the jurisdiction

of a United States Magistrate Judge under 28 U.S.C. § 636(c).  Dkt. Nos. 9-11.

### III. LEGAL STANDARD

Removal of a state court action to federal court is appropriate only if the federal court

would have had original subject matter jurisdiction over the suit.  *See* 28 U.S.C. § 1441(a).

A federal district court must remand a removed case to state court "[i]f at any time before

the final judgment it appears that the district court lacks subject matter jurisdiction."  *Id.* §

1447(c); *see also Maniar v. FDIC*, 979 F.2d 782, 784-85 (9th Cir. 1992) (noting that

section 1447(c) permits district courts to remand *sua sponte* for lack of subject matter

jurisdiction).  In deciding whether removal was proper, courts strictly construe the removal

statute against finding jurisdiction, and the party invoking federal jurisdiction bears the

burden of establishing that removal was appropriate.  *Provincial Gov't of Marinduque v.*

*Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) (citations omitted).  Where doubt

exists regarding the right to remove an action, it should be resolved in favor of remand to

state court.  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir.

2003).

Here, the notice of removal asserted that this Court had federal question jurisdiction

over plaintiffs' complaint.  Dkt. No. 1 at 2-5.  District courts have federal question

jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the

United States."  28 U.S.C. § 1331.  A case "arises under" federal law if the complaint

establishes "either that federal law creates the cause of action or that the plaintiff's right to

relief necessarily depends on resolution of a substantial question of federal law."  *Proctor*

*v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009) (citations omitted).

Federal jurisdiction exists only when a federal question is presented on the face of the

plaintiff's properly pleaded complaint.  *Provincial Gov't of Marinduque*, 582 F.3d at 1091.

//

1

**IV. DISCUSSION**

2

3

4

5

In their response to the order to show cause, defendants do not dispute that the causes of action in the complaint here are created by state, not federal law.  *See* Dkt. No. 28. Defendants nonetheless contend that Regulation Z is a substantial, disputed question of federal law that is a necessary element of the CLRA and ASFA causes of action.  *Id.* at 6.

6

**A.    Necessary Element of a Claim**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

It is well-settled that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1040 (9th Cir. 2003) (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986)); *see, e.g.*, *Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997) (finding no federal jurisdiction where the complaint alleged violations of Title VII and the federal Constitution, but asserted only state law claims for relief).  Further, "[w]hen a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).  It is thus of no consequence that, if defendants' disclosures comply with Regulation Z, they cannot be found to have violated the CLRA or the ASFA "on that basis."  Dkt. No. 28 at 3. The pertinent question is whether there is an alternative state law basis for plaintiffs' claims, so that the alleged TILA/Regulation Z violations cannot be deemed a "necessary" element.  That appears to be the case here.  The only references to federal law in the complaint are the alleged violations of the TILA/Regulation Z in the ASFA and CLRA claims.  Both of those claims allege multiple factual and legal theories of liability.

24

25

26

27

28

The CLRA claim alleges that defendants' actions of requiring plaintiff Robert Muller to execute a RISC containing blank spaces and their failure to disclose the true identity of the buyer on the RISC violate *both* the TILA and the ASFA.  Dkt. No. 1 ¶¶ 99, 105.  The complaint also alleges that those practices violate the CLRA, California Civil Code § 1770(a)(5), (9) and (14) (prohibiting the practices of representing that a person has a

sponsorship, approval, status, affiliation, or connection which he or she does not have; advertising goods or services with intent not to sell them as advertised; and representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve). *Id.* In addition, Count 5 of the ASFA claim alleges that defendants' actions of requiring Muller to execute a RISC containing blank spaces violate California Civil Code § 2981.9, which provides that "[e]very conditional sale contract subject to this chapter shall be in writing and, . . . shall contain in a single document all of the agreements of the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle." *Id.* ¶ 127. Similarly, while the complaint alleges that defendants' charging of a 6.99% APR violated Regulation Z, the same conduct is alleged to be in violation of California Civil Code § 2982 and California Civil Code § 1770(a)(5), (9), (14), as well as (19) (inserting an unconscionable provision in the contract). *Id.* ¶¶ 100, 129. It thus appears that defendants could be found liable for their alleged conduct on a number of different state law grounds without the need to construe any federal statute or regulation. Moreover, both the CLRA and ASFA claims seek only remedies pursuant to state law. *Id.* at 27-28, 30-31. The alleged TILA/Regulation Z violations are not a "necessary" element of plaintiffs' claims.

This finding is in accord with many district court cases where courts have declined to find federal question jurisdiction over state law claims despite plaintiff's allegations of TILA violations. *See e.g.*, *Pangilinan v. Downey Sav. & Loan Ass'n*, No. 11-cv-2016 EMC, 2011 WL 2837587, at *3-4 (N.D. Cal. July 18, 2011) (finding remand appropriate because TILA was not a necessary element to § 17200 claim where (1) the same facts that could support TILA violation also supported state law violations underpinning § 17200 claim; (2) there was no dispute about the meaning or construction of TILA; and (3) any TILA question was not substantial); *Gaspar v. Wachovia Bank*, No. 10-cv-3597 SBA, 2011 WL 577416, at *2-3 (N.D. Cal. Feb. 9, 2011) (concluding that there was no federal question jurisdiction over state law claims where alleged factual grounds for breach of implied covenant of good faith and fair dealing claim went beyond the disclosures

statutorily mandated by TILA); *California v. Pinnacle Sec. CA. LP*, 746 F. Supp. 2d 1129, 1131 (N.D. Cal. 2010) (lawsuit alleging § 17200 cause of action was not subject to removal despite references to TILA and Regulation Z because plaintiff was able to show that defendant acted unlawfully based on state law provisions without reference to federal law); *Briggs v. First Nat. Lending Services*, No. 10-cv-00267 RS, 2010 WL 962955, at *2-3 (N.D. Cal. Mar. 16, 2010) ("Here, since the complaint's UCL claim is supported by numerous theories of recovery under California law, the alleged violation of TILA is not considered a necessary element under *Rains*."); *Cortazar v. Wells Fargo & Co.*, No. 04-894 JSW, 2004 WL 1774219, at *2-4 (N.D. Cal. Aug. 9, 2004) (concluding that plaintiffs did not need to depend on violation of federal law to bring their section 17200 claim because they alleged independent state law theories supporting that claim); *Castro v. Providian Nat. Bank*, No. 00-cv-4256 VRW, 2000 WL 1929366, at *3 (N.D. Cal. Dec. 29, 2000) (stating that "whether or not plaintiffs have asserted the TILA as a basis for their section 17200 claim, the TILA is not a necessary element for a finding of liability under the state law at issue.  Indeed, a jury could find that defendants have violated section 17200 . . . without finding that defendants have violated the TILA.").

　　　Defendants attempt to distinguish the above-cited cases on the basis that "[i]n none of those cases does the court consider a statute, such as ASFA, that ***expressly*** precludes liability where the alleged conduct complies with a specified federal statute."  Dkt. No. 28 at 10 n.3.  This argument is premised on a provision of the ASFA which states that "[n]otwithstanding any other provision of this chapter to the contrary, any information required to be disclosed in a conditional sale contract under this chapter may be disclosed in any manner, method, or terminology required or permitted under Regulation Z, . . . , if all of the requirements and limitations set forth in subdivision (a) are satisfied."  Cal. Civ. Code § 2982(m); *see* Dkt. No. 28 at 7-8.  Defendants conclude that, if they are found to have complied with Regulation Z, "their actions are protected by a safe harbor under the CLRA as well as ASFA."  Dkt. No. 28 at 9.  The attempt to raise a federal question based on this "safe harbor" defense theory is not persuasive.

As stated by the court in *Medina v. Performance Auto. Grp., Inc.*, 841 F. Supp. 2d 1121, 1127 (E.D. Cal. 2012), "[a]n argument by Defendants that Defendants complied with federal law is a *defense* to Plaintiff's claims, and not a necessary element in establishing Plaintiff's prima facie case. As such, the federal issue presented in that defense is not sufficient to confer federal question jurisdiction over this case." (citation omitted); *accord PeopleBrowsr, Inc. v. Twitter, Inc.*, No. 12-cv-6120 EMC, 2013 WL 843032, at *3 (N.D. Cal. Mar. 6, 2013) ("Even assuming that the Sherman Act provided a 'safe harbor' for the conduct alleged in the complaint, such a 'safe harbor' operates, in essence, as a federal defense to the 'unfair act' claim. Federal courts do not generally have jurisdiction over state law claims for which a defense based in federal law exists."); *Reese v. Rank*, No. 85-cv-0465, 1985 WL 56548, at *2 (N.D. Cal. Mar. 19, 1985) ("The incorporation of federal law in a state statute does not confer federal subject matter jurisdiction; the federal law must instead be applicable by its own force. . . . A state legislature may not create federal jurisdiction simply by anticipating that its law may be unenforceable in light of existing federal statutes.") (citation omitted); *see also Britz v. Cowan*, 192 F.3d 1101, 1103 (7th Cir. 1999) ("[A] state cannot expand federal jurisdiction by deciding to copy a federal law. . . . If it incorporates federal law into state law and then gets the federal law wrong, it has made a mistake of state law . . . ."). *Bourgi v. W. Covina Motors, Inc.*, 166 Cal. App. 4th 1649 (2008), cited by defendants, does not help them because it does not bear on the issue of federal subject matter jurisdiction, and, in fact, confirms that a "safe harbor" provision is properly considered to be a defense to a claim. *See id.* at 1663; Dkt. No. 28 at 9.

Nor could defendants show that Regulation Z is a necessary element of plaintiffs' claims by arguing that the TILA preempts the ASFA "to the extent of any inconsistency." Dkt. No. 28 at 7. "The fact that a defendant might ultimately prove that a plaintiff's claims are preempted . . . does not establish that they are removable to federal court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398 (1987). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393. As its

1    statutory language makes clear, the TILA has limited preemptive effect.  15 U.S.C. §

2    1610(a)(1) (TILA does not "annul, alter, or affect the laws of any State relating to the

3    disclosure of information in connection with credit transactions, except to the extent that

4    those laws are inconsistent with the provisions of this subchapter and then only to the

5    extent of the inconsistency."); *Gaspar*, 2011 WL 577416, at *2; *Ortega v. HomEq*

6    *Servicing*, No. 09-cv-02130, 2010 WL 383368, at *7 (C.D. Cal. Jan. 25, 2010).

7    Accordingly, defendants' preemption defense does not raise a federal question.

8           Furthermore, Regulation Z does not appear to be a necessary element of plaintiffs'

9    claims because the state law violations alleged in the complaint go beyond the

10   requirements of Regulation Z.  While the ASFA provides that a conditional sale contract

11   must contain the disclosures required by Regulation Z, it mandates a number of *additional*

12   disclosures and notices, including disclosures of the cash price, the amount charged for

13   service contracts, certain amounts paid to public officials, and information concerning the

14   finance charge among others.  Cal. Civ. Code § 2982.  Defendants assert that "both ASFA

15   and Regulation Z require an accurately-stated APR," but that "Regulation Z provides the

16   methodology."  Dkt. No. 28 at 7.  Plaintiffs, however, respond that "[t]his case is not about

17   the 'manner, method, or terminology' of giving disclosures 'required or permitted under

18   Regulation Z.'  It is about the truthfulness of those disclosures, as required by state law."

19   Dkt. No. 30 at 2.  The Court cannot say that plaintiffs' claims as pleaded necessarily

20   require a determination of whether defendants' disclosures complied with Regulation Z.

21   *See Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) ("[T]the plaintiff is the 'master'

22   of her case, and if she can maintain her claims on both state and federal grounds, she may

23   ignore the federal question, assert only state claims, and defeat removal.") (citation

24   omitted).  For the foregoing reasons, the Court finds that defendants have not demonstrated

25   that Regulation Z is a necessary element of the claims here.

26   **B.    Substantial and Disputed Question of Federal Law**

27          Even if Regulation Z were shown to be a necessary element, defendants have not met

28   their burden of demonstrating a substantial and disputed question under Regulation Z.  *See*

*Pangilinan*, 2011 WL 2837587, at *3-4.  In *Medina*, the court addressed the propriety of the removal in a similar action as the present one, involving an automobile buyer who brought state law claims, including under the ASFA and CLRA, alleging that the seller backdated the RISC and failed to make proper disclosures and representations during the course of the sales transaction.  841 F. Supp. 2d at 1123-24.  The court held that the ASFA's mere reference to Regulation Z did not establish federal question jurisdiction, and that "the accuracy of the calculation of the Annual Percentage Rate in a particular sales transaction does not raise a substantial question of federal law, but is, instead, based on a straightforward numerical calculation."  *Id.* at 1127.  Defendants urge the Court not to follow *Medina* because it is not controlling and was "wrongly decided," arguing that "Regulation Z provides detailed and complex instructions for accurate APR calculation." Dkt. No. 28 at 9-10.  The Court is not persuaded by defendants' argument.  The complaint here alleges that Auto Mission charged a 6.99% APR with a $1,000 rebate instead of the 0% APR promised.  *See* Dkt. No. 1 at ¶¶ 54, 60, 76, 100, 129.  These allegations do not appear to raise a substantial question about the interpretation of Regulation Z or its "instructions for accurate APR calculation."

**C.    The Federal Arbitration Act**

Defendants also argue that the agreements at issue in this case contain an arbitration provision requiring that all of plaintiffs' claims be governed by the Federal Arbitration Act ("FAA").  On this basis, defendants contend that the scope of the FAA is a "'necessary' and 'substantial' federal issue the Court should consider in deciding whether to retain jurisdiction."  Dkt. No. 28 at 11-12.  As defendants concede, however, the FAA is not an independent basis for federal question jurisdiction.  *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 (9th Cir. 2004); *Medina*, 841 F. Supp. 2d at 1128 (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 26 n.32 (1983)).  Defendants' argument that plaintiffs' claims are subject to arbitration does not establish a federal question.

//

Case No.13-cv-00304 NC
ORDER REMANDING CASE TO
STATE COURT

1

## V. CONCLUSION

2   Defendants have not demonstrated that plaintiffs' claims can be resolved only by

3 interpreting federal law.  Where, as here, a claim can be supported by alternative and

4 independent state law theories, the Court has no federal question jurisdiction.  Accordingly,

5 the Court orders the case remanded to the Superior Court of California, San Mateo County.

6 The hearing on the motion to compel arbitration set for May 15, 2013 is vacated.  The clerk

7 is directed to terminate all deadlines and this case.

8   IT IS SO ORDERED.

9   Date: May 13, 2013

10   Nathanael M. Cousins
    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28